Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the plaintiff against the United States to recover the sum of $450,840.22. The plaintiff alleges that it furnished the Tbuited States 4,043,410 pounds of copper worth 26.15 cents per pound, or $1,057,351.72, and that the United States replaced the said copper with copper worth only 15 cents per pound or $606,511.50, and it alleges that it is entitled to be paid the difference in the value of the copper so furnished by it and that furnished by the United States, which difference it alleges to be $450,840.72.
The basis of this claim is a conversation had between Lieutenant Lincoln of the Procurement Division of the Ordnance Department, U. S. A., and a representative of the plaintiff, in which conversation Lieutenant Lincoln said that if the plaintiff furnished copper to the Rome Manufacturing Company, which company had a contract with the United States, he, Lincoln, would see to it that the plaintiff should suffer no loss by so doing. And the claim is further based upon a request made by Captain Brown, also of the Procurement Division of the Ordnance Department, U. S. A., that the plaintiff furnish its own copper if it was unable to get the copper from the Government. In both instances it was understood between the parties that whatever quantity of copper was furnished by the plaintiff was to be replaced by the Government. There was nothing said as to the quantity of the copper to be furnished by the plaintiff, nor as to the price of said copper.
The facts show that the plaintiff was very much interested in the contracts which the Rome Manufacturing Company had with the United States, and that in order to begin on the contracts promptly copper had to be furnished at once. The Government, at the moment, had no copper available at Rome; the plaintiff had on hand a large supply of copper, which it could use in no other way, and it, in fact, urged the Rome Manufacturing Company to give it the order for copper, as if it did not. receive the order it might have to shut down.
Apart from the question as to whether or not Lieutenant Lincoln and Captain Brown had authority to purchase copper for the Government, or to oblige the plaintiff to furnish *292 copper for use on a Government contract, the facts show that the Government returned, every pound of copper to the plaintiff which it had furnished for these contracts, and that the copper so returned, was of equal value with that which the plaintiff had furnished. The facts further show that at the time when the copper was so returned it was accepted by the plaintiff without protest; that nothing was said by the plaintiff as to any difference in value of the copper furnished and that which was returned; and that no claim was made against the Government then or thereafter, until May 6, 1919, a month after the last delivery of copper by the Government. On the contrary, the plaintiff made strenuous efforts to get the Government to purchase 7,000,000 pounds of copper which it had on hand at the time the price of copper began to decline, and never suggested at that time that it had any claim for the difference of value in copper furnished by it and replaced by the Government. At the time of the replacement of the copper by the Government and its unqualified acceptance by the plaintiff there was no suggestion or intimation on the part of the plaintiff that there was any difference in value.
This claim was presented to the War Department Claims Board, and relief was denied by that board. The decision of the board was affirmed by the Secretary of War. Decisions of the War Department Appeal Section, War Department Claims Board, vol. 7, p. 327.
The plaintiff claims that it is entitled to recover either under the general jurisdiction of this court or under the national defense act, 39 Stat., chapter 134, sec. 120, or under the Dent Act, 40 Stat. 1272.
The plaintiff is not entitled to recover under section 145 of the Judicial Code because there is no contract express or implied between the plaintiff and the United States. Neither Lieutenant Lincoln nor Captain Brown had any authority to purchase copper for the United States, nor did they have authority to enter into any contract with the plaintiff to furnish copper to the Rome Manufacturing Company on behalf of the United States, and even if they had such authority the contract would not have been binding on the United States unless the same had been “ reduced to writing *293 and, signed by the contracting parties, with their names at the end thereof.” Section 3744;, Revised Statutes.
Nor can the plaintiff recover under section 120 of'1 the national defense act. No order was placed with the plaintiff by the President or the Secretary of War, or by any one under their authority, for the copper which the plaintiff furnished. Th'e plaintiff’s plant was not taken.. The restrictions of the War Industries Board placed upon the production and distribution of copper was a lawful governmental action, and can not be construed into a taking of plaintiff’s plant, nor from them can there arise any claim against the United States for the furnishing of materials to the Government by the plaintiff or any one else.
Nor can the plaintiff recover under the Dent Act. The contract upon which the plaintiff relies, if contract it can be called, is that officers of the United States told the plaintiff to use its copper on the Borne Manufacturing Company contracts until Government copper was received to replace it. From this the plaintiff deduces that a contract to purchase was entered into, or if hot a contract to purchase, then a promise was implied that the United States in replacing the copper was to replace copper of equal value with the copper furnished by the plaintiff. These officers had no authority to enter into any contract for the purchase of copper, nor to bind the Government as to the price of copper, and so informed the plaintiff. These officers were not acting under the authority of the Secretary of War or of the President. They were acting outside of the scope of their authority, which was to ascertain whether it would be proper to place a contract with the Borne Manufacturing Company. Their promises to the plaintiff, or their assurance that it would suffer no loss if it furnished to the Government its own copper until it could be replaced by the Government, can not be construed into “an agreement, express or implied,” that the United States would pay it a certain price for the copper so furnished or that the United States would pay it the difference in value of the copper furnished and the copper replaced. However, the facts show that the plaintiff suffered no loss by its furnishing the *294 copper, and that the United States replaced copper of equal value with the value of the copper furnished by the plaintiff.
The petition of the plaintiff is dismissed. It is so ordered.
GRAi-iam, Judge; Dowhey, Judge; Booth, Judge, and Campbell, Chief Justice, concur.